## A00A2593. NICKERSON v. THE STATE.
(545 SE2d 587)

BARNES, Judge.

Marcus Lane Nickerson was tried and convicted of false imprisonment, criminal solicitation of sodomy, aggravated assault, and possession of less than one ounce of marijuana. The jury acquitted him of kidnapping, and the trial court sentenced him to serve a total of 29 years in prison. He appeals, asserting that the convictions should be reversed because he was not present during a pretrial motions hearing, and because his trial counsel was ineffective. For the reasons that follow, we affirm.

Viewed in the light most favorable to the verdict, the evidence at trial established that Nickerson approached the victim in a bar, bought her and her friend a beer, and struck up a conversation. When the victim walked out of the bathroom, Nickerson said he had to leave and asked her to walk him to his car to finish their conversation. The two walked to the far end of the parking lot, where Nickerson's car was parked facing out. Nickerson got into the driver's seat and opened the passenger door. The victim testified that she was leaning against the door, talking to Nickerson, when he suddenly grabbed her arm, pulled her inside, and drove off quickly, making the passenger door slam shut.

He drove to his nearby apartment over her protests, and after he parked, she discovered that she could not open her car door. Nickerson pulled the victim out of the car and into his residence. The victim said Nickerson had been calm and reassuring to that point and said, "Come here and look at this." She stepped five feet or so into the room, and he pulled her into the bathroom, turned out the light, and demanded that she perform oral sex on him or he would kill her. The victim broke away and got out of the bathroom. Nickerson tackled her onto the bed. She continued to scream and struggle, and then, she said, he suddenly quit fighting.

As she began unlocking the door, Nickerson said, "If you go out there, you're going to get raped or killed." "I'll take my chances," she replied and ran outside, banging on doors until someone came to her aid and called the police.

The police came to the scene, questioned the victim, and then questioned Nickerson at his apartment. They placed him in custody and then obtained and executed arrest and search warrants.

1. Nickerson asserts that he was not present during a pretrial hearing on the State's motion to present evidence of a similar transaction. He points to his trial counsel's initial statement in the hearing, in which counsel said, "Your Honor, may I address the Court before my client comes?" After the court assented, counsel said, "My client is going to file a motion that needs an attached affidavit. I

haven't been able to get to him this morning and is there a possibility that he could sign this before the Court or have it notarized in some manner?" The court responded and then called the hearing. Nothing in the transcript indicates that Nickerson entered the courtroom, and Nickerson later testified at a hearing on his motion for new trial that he was not present.

On the other hand, Nickerson's trial counsel testified at the motion for new trial hearing that, "to [his] knowledge," Nickerson was present during the similar transaction hearing. On further questioning, trial counsel said, "Man, it's two years. I think he was. I'm pretty sure he was there." Moreover, the record contains Nickerson's motion to strike a prior conviction and affidavit in support, which is stamped "Filed in Court" on the hearing date at 11:45 a.m. Nickerson's signature was notarized on the hearing date, and the transcript shows the hearing concluded at 12:15 p.m.

The trial court specifically addressed the issue of whether Nickerson was present at the similar transaction hearing. In its order denying Nickerson's motion for new trial, the court made the following findings:

> although the transcript of the similar transaction motion is ambiguous, counsel for defendant testified in the Motion for New Trial that his client was present, to his knowledge: "Yes, to my knowledge he was, Yes." (p. 10, transcript of Motion for New Trial) "To my knowledge, he was" (p. 11) "I think he was. I'm pretty sure he was there, yes." (p. 11) The record of the hearing reflects a statement on the record before the Defendant was brought out, and before the motion was called for hearing. The lack of a statement that defendant was being brought out does not show he was not present. Although the defendant claims he was not present, the Court's practice of requiring any waiver of the defendant's presence be recorded, and the testimony of defense counsel, establish to the Court's satisfaction that the defendant was present at the similar transaction hearing.

While we agree that Nickerson had a right to be present during a critical stage of the proceedings against him, *Goodroe v. State*, 224 Ga. App. 378, 380 (1) (480 SE2d 378) (1997), the trial court heard testimony during the new trial hearing and determined that Nickerson was present. "It is the province of the trial court to weigh the credibility of the witnesses and unless clearly erroneous, its findings of fact will be upheld on appeal." (Punctuation omitted.) *McKenzie v. State*, 223 Ga. App. 108, 109 (2) (a) (476 SE2d 868) (1996). The trial court's determination that Nickerson was present during the similar trans-

action hearing is not clearly erroneous, and we therefore find no error.

2. Nickerson asserts that his trial counsel was ineffective, citing six specific instances in which he claims his counsel's actions were deficient.

Nickerson's claim was presented to and ruled upon by the trial court, whose finding of effectiveness must be upheld unless clearly erroneous. *Johnson v. State*, 222 Ga. App. 722, 728 (9) (475 SE2d 918) (1996). In order to prevail on a claim of ineffective assistance of counsel, Nickerson must show both deficient performance and actual prejudice. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). "To show deficient performance, he must demonstrate that his counsel's performance was not reasonable under the circumstances confronting his counsel at the time, without resorting to hindsight." *Turpin v. Mobley*, 269 Ga. 635, 638 (3) (502 SE2d 458) (1998).

Nickerson's burden is high because his counsel is presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Turpin*, supra, 269 Ga. at 638 (3). To show actual prejudice, he must demonstrate a reasonable probability that he would have been acquitted but for counsel's unprofessional errors. Id.

(a) Nickerson argues his trial counsel was ineffective for failing to object to the State's argument and comment regarding his "future dangerousness."

"It is manifestly improper for a prosecutor to argue to the jury during the guilt-innocence phase of any criminal trial that if found not guilty, a defendant poses a threat of future dangerousness." *Wyatt v. State*, 267 Ga. 860, 864 (2) (b) (485 SE2d 470) (1997).

The State's closing argument included the following statements:

> Marcus Lane Nickerson, a predator. Moving in the dark, hunting for his prey. Like all predators, he seeks the weak to satisfy his desires, from Nickerson, his lustful desires. Turning young females' lives into a nightmare. . . . It's horrifying to see the sentence that was dealt in that case. . . . Really punished him, didn't it? He did real good with that. His prey. Real successful with it. So successful, he did it again. He's a predator. Here's a man that is on probation for this offense and he did it again. He did it again. Ladies and Gentlemen of the jury, it's time to bring the predator to an end. No more nightmares. No more sleek moving through the night, coaxing women into cars. Messing with security locks on door mechanisms so the women can't get out. . . .

It's time for the assaults to stop. It's time for the nightmares to come to an end.

We agree with Nickerson that the State's closing argument contained an improper reference to Nickerson's future dangerousness as was forbidden in *Sterling v. State*, 267 Ga. 209, 210 (2) (477 SE2d 807) (1996), and that his trial counsel's failure to object to the argument during closing constituted deficient performance. "However, we conclude the error was harmless because the overwhelming evidence supporting the verdict renders it highly unlikely that this portion of the argument contributed to the verdict." *Bellamy v. State*, 272 Ga. 157, 162 (11) (527 SE2d 867) (2000); *McClain v. State*, 267 Ga. 378, 383 (3) (a) (477 SE2d 814) (1996). Therefore Nickerson has failed to show actual prejudice, and the trial court did not err in denying his motion for new trial.

(b) Nickerson argues his trial counsel was ineffective for failing to move to suppress evidence of the victim's earring that the police found on his bed. His trial counsel testified that he did not move to suppress the evidence because he thought the motion would not be successful. The investigating police officers testified at trial that Nickerson assented to their request to enter his room and that they pulled the sheets back from his bed to check for hidden weapons because in the officers' experience weapons were frequently hidden in bed linens.

Because Nickerson gave the officers permission to enter his room, their presence was lawful, and once they lawfully entered, they were entitled to make a protective sweep of the surroundings. *Inglett v. State*, 239 Ga. App. 524, 525 (1) (521 SE2d 241) (1999). That protective sweep uncovered the earring, and before searching the premises further, the officers obtained a search warrant. Thus, a motion to suppress would not have been successful. "Trial counsel's failure to pursue a futile motion . . . does not constitute ineffective assistance." *Mackey v. State*, 235 Ga. App. 209-210 (1) (509 SE2d 68) (1998). We find no error.

(c) Nickerson alleges his trial counsel was ineffective for failing to object to what he characterizes as improper comments on his rights to remain silent and to representation. The investigating detective testified that, when he arrived on the scene, Nickerson was secured in the back of a patrol car. He asked Nickerson several times what his name was, to which Nickerson replied with expletives, adding that he did not have to tell the police anything, he had not done anything, he did not know "that woman," he was being targeted because he was black and the victim was white, and his lawyer was Jack Menendez. After Nickerson began screaming, "You just want to beat me, you just want to beat me," the detective testified that he

stopped asking Nickerson for his name, closed the car door, and went to obtain a search warrant.

A police officer's request for a suspect's name, which is a procedure required under OCGA § 17-4-27, does not constitute custodial interrogation. *Hibbert v. State*, 195 Ga. App. 235, 237 (393 SE2d 96) (1990). Nickerson's statements in response to the requests for identification were lawfully obtained, id., and an objection to the detective's testimony about the statements would not have been successful. Therefore, the trial court did not err in concluding that Nickerson's trial counsel was not ineffective for failing to object to the testimony.

(d) Nickerson asserts his trial counsel was ineffective because he did not object to an "overly broad and vague instruction on the use and limitations of similar transaction evidence." He specifically alleges that the following language in the charge is overbroad: "Before you may consider evidence of a similar offense for any purpose, it must first be made to appear and you must be satisfied that the Defendant is the same person to whom the evidence upon the similar offense *pertains*." (Emphasis supplied.) Nickerson cites *Rivers v. State*, 236 Ga. App. 709 (513 SE2d 263) (1999), for the proposition that the portion of the charge quoted above is reversible error. While the charge given in *Rivers* contained the word "pertains," we did not reverse for that reason. We reversed because the charge in *Rivers* informed the jury "that it also could consider similar transaction evidence for the purpose of showing 'the crimes charged in the case,' and in considering an 'element of the offense charged in this indictment.'" Id. at 712 (1) (b). That charge thus created a fair risk that the jury was confused and misled as to the proper limited use of similar transaction evidence to the prejudice of the defendant.

In this case, however, the limiting charge clearly prohibited the jury from considering the similar transaction evidence for the purpose of showing "the crimes charged in the case." The charge in its entirety follows:

> Ladies and gentlemen, in regard to the testimony of this witness, let me explain to you that sometimes evidence is admitted for a limited purpose. Such evidence may be considered by you, the jury, for the sole purpose or issue to which the evidence is limited and not for any other purpose. The law provides that evidence of another offense allegedly committed by this defendant, that is similar in terms of common design, scheme, plan, course of conduct, motive, location, or other factors, to the offense for which the defendant is on trial, may be admissible and may be considered for the limited purpose of showing, if it does, the identity of the perpetrator, or the state of mind, knowledge or intent of the

perpetrator, in the crime charged in the case now on trial. Such evidence, if any, may not be considered by you for any other purpose. The Defendant is on trial for the particular offense — offenses charged in this bill of indictment, only. The Court does not express any opinion as to whether the Defendant has had any other offense. This is a matter solely for your determination. Before you may consider evidence of a similar offense, for any purpose, it first must be made to appear, and you must be satisfied, that this Defendant is the same person to whom the evidence upon the similar offense pertains. If you believe such has been proven, however, you are strictly limited in your consideration of the evidence as to the identity or the state of mind as charged in this indictment.

Considering the charge as a whole, it was not overly broad and adequately described to the jury the permissible limited consideration to give the ensuing similar transaction evidence. Accordingly, the trial court did not err in finding Nickerson's trial counsel was not deficient for failing to object to it.

(e) Finally, Nickerson contends his trial counsel was deficient for failing to object to an argument by the State that "he would not suffer the full penalty imposed by the trial court because of the existence of pardon, parole or clemency, in violation of OCGA § 17-8-76." The Code section provides:

(a) No attorney at law in a criminal case shall argue to or in the presence of the jury that a defendant, if convicted, may not be required to suffer the full penalty imposed by the court or jury because pardon, parole, or clemency of any nature may be granted by the Governor, the State Board of Pardons and Paroles, or other proper authority vested with the right to grant clemency. (b) If counsel for either side in a criminal case argues to or in the presence of the jury as provided in subsection (a) of this Code section, opposing counsel shall have the right immediately to request the court to declare a mistrial, in which case it shall be mandatory upon the court to declare a mistrial. Failure to declare a mistrial shall constitute reversible error.

The testimony to which Nickerson objects came about during the State's examination of one of the officers who executed the search warrant of Nickerson's apartment. The officer stated that he was trying to find something with Nickerson's name on it to identify him. He found a leather case containing papers, and he testified that he

"located several reports, I believe, from Louisiana and some papers . . . about his parole, or that he was supposed to report to, I think the state's parole board." He then identified State's Exhibit 13, "the probation division for Georgia Department of Corrections registration form" that he found in Nickerson's room.

Nickerson also contends his trial counsel failed to object to the following portion of the State's closing argument:

> It's horrifying to see the sentence that was dealt in that case. And you'll see the conviction. It's horrifying. He got a probationary sentence with sexual· deviancy treatment. Really punished him, didn't it? He did real good with that. His prey. Real successful with it. So successful, he did it again. He's a predator. Here's a man that is on probation for this offense and did it again. He did it again.

"The purpose of the statute is to prevent prosecutors from arguing in essence that the jury should give a more severe sentence to compensate for possible pardon, parole, or other clemency." *Gilreath v. State*, 247 Ga. 814, 835 (15) (279 SE2d 650) (1981). Nickerson's counsel was not deficient for failing to object to the prosecutor's questions to one of the arresting officers regarding the circumstances of Nickerson's arrest, at which the police determined who he was by reviewing a probation registration form they found during a lawful search of Nickerson's apartment.

The State's closing argument also was not objectionable on the basis of OCGA § 17-8-76, because the prosecutor did not actually argue to the jury that if Nickerson were convicted, he might not suffer the full penalty imposed by the court. Nevertheless, we note that the prosecutor's statement was highly improper. The fact that Nickerson was on probation when he was arrested "was completely immaterial to the issue to be decided by the jury, i.e., whether [Nickerson] committed the crimes charged." *Moore v. State*, 242 Ga. App. 249, 252 (1) (b) (529 SE2d 381) (2000). In spite of the prosecutor's error, given the overwhelming evidence of Nickerson's guilt we cannot find that it is highly probable the outcome of the trial would have been different without that error. Id. Thus, Nickerson was not prejudiced by his attorney's decision not to object to the prosecutor's improper statement, and the trial court did not err in finding that Nickerson's trial counsel was not ineffective for failing to object to this testimony and argument.

*Judgment affirmed. Blackburn, C. J., and Eldridge, J., concur.*

DECIDED FEBRUARY 6, 2001 —
RECONSIDERATION DENIED MARCH 29, 2001 —

*Shandor S. Badaruddin*, for appellant.
*Patrick H. Head, District Attorney, Dana J. Norman, Rose L. Wing, Assistant District Attorneys*, for appellee.