In the Supreme Court of Georgia

Decided: November 2, 2015

S15A0939. WILLIAMS v. THE STATE.

BENHAM, Justice.

Following a jury trial, appellant Anthony Tawon Williams was found guilty of four counts of felony murder, as well as their underlying felonies, arising out of the death of his young daughter. The child died after ingesting cocaine which the jury found appellant and his co-defendant, Stephanie Stephens, the mother of the child, possessed at their home with intent to distribute.[1] Appellant now appeals his conviction and, for the reasons set forth

---

[1] The crimes occurred on June 16, 2007. On September 29, 2008, a Bartow County grand jury returned an indictment charging appellant and his co-defendant, Stephanie Stephens, with: Count 1, felony murder (possession with intent to distribute cocaine); Count 2, felony murder (possession of cocaine); Count 3, felony murder (cruelty to children in the second degree); Count 4, felony murder (contributing to the deprivation of a minor); Count 5, cruelty to children in the second degree; Count 6, contributing to the deprivation of a minor; Count 7 possession of cocaine with intent to distribute; and Count 8, possession of cocaine. All counts charged appellant and his co-defendant as parties to a crime. The felony murder counts alleged certain criminal acts caused the death of a minor child, Jewell Williams, and the cruelty to children and deprivation of a minor counts related to alleged criminal acts involving that child. The trial court denied appellant's motion to sever, both co-defendants were tried jointly by a jury from May 18-22, 2009, and both were found guilty of all charges. After a sentencing hearing, appellant was sentenced to four life sentences to serve concurrently for the guilty verdicts on the felony murder counts, and the remaining guilty verdicts were merged for sentencing purposes. The trial court denied appellant's amended motion for new trial by order dated July 3, 2013. On that same date, the trial court also entered an order

below, we affirm.

Viewed in the light most favorable to the verdict, the evidence presented at trial shows that during the early morning hours of June 16, 2007, emergency personnel responded to a 911 call involving a child in distress at the home appellant shared with co-defendant Stephens and their five children, including one-year-old Jewell Williams. Jewell was taken to the hospital where she later died of cocaine poisoning. A GBI forensic toxicologist who tested a sample of Jewell's blood for the presence of drugs and alcohol testified he could not say how much cocaine she had ingested but that her blood tested positive for cocaine at a level that exceeded the 1.6 milligrams per liter which was the highest measurement calibrated on the instrument he regularly uses to test blood for such substances. The testimony of investigators established that appellant told authorities Jewell had ingested cocaine brought into the home that night by

vacating sentences, by which it merged Counts 3 and 4 with Counts 1 and 2 for purposes of sentencing, and vacated the life sentences previously imposed on Counts 3 and 4, leaving concurrent life sentences to serve on Counts 1 and 2. Appellant filed a notice of appeal on July 15, 2013, that was later amended. An appeal was docketed in this Court, but by order dated February 24, 2014, this Court dismissed the appeal as untimely filed. On August 22, 2014, appellant filed a motion for an out-of-time appeal in the trial court, which the trial court granted by order filed October 7, 2014. In that same order, the trial court adopted its original order denying appellant's request for new trial, but the trial court also amended its July 3, 2013 order vacating sentences, effectively vacating the felony murder convictions for Counts 2, 3, and 4 and leaving only one conviction and life sentence for felony murder pursuant to Count 1. Appellant filed a timely notice of appeal, and the case was docketed to the April 2015 term of this Court. Oral argument was heard May 11, 2015.

Freida Wofford and that Ms. Wofford had returned later that night looking for her lost cocaine. Appellant showed the investigating officer the exact location in the living room, in front of the sofa, where he believed Jewell had found and ingested the cocaine. The officer observed a crystal substance on the floor in front of the sofa that appeared to be cocaine. A vacuum cleaner that was in the same room was seized as evidence, and testing later confirmed the presence of trace amounts of cocaine inside the vacuum cleaner bag. No additional cocaine or other controlled substance, and no drug paraphernalia, were found in the house.

Ms. Wofford testified at trial and denied she had gone to appellant's house on the night of Jewell's death, but stated she had purchased crack cocaine from appellant's home on at least five or six previous occasions. She stated that the cocaine she purchased was typically kept in the sofa or in co-defendant Stephens's purse. She further testified that on the occasion of her most recent purchase prior to Jewell's death, she saw Jewell walking around the home. Appellant was inside the home during this last transaction.

Other witnesses also testified about purchasing cocaine at appellant's home. Witness Gwendolyn Wheeler testified she purchased crack cocaine from

3

Stephens at appellant's house at approximately 10:30 p.m. on the night of Jewell's death. When she returned the next morning to purchase more, Stephens told her there was no more cocaine and that the baby was sick. Ms. Wheeler had purchased crack cocaine from both appellant and Stephens on at least twenty prior occasions. These transactions typically took place inside the home when appellant's children were present. Sometimes, Stephens would order the children out of the room where the drug transaction was occurring, but Jewell would typically come back into the room before the transaction was completed. Appellant was often present and serving as a "lookout man." Ms. Wheeler testified that on some occasions when she went to the house to make purchases and dealt with Stephens, appellant would call the children into another room, but he would then go outside to the front of the house. Witness Paula Ward testified she had purchased "loose" crack cocaine from both appellant and Stephens on a daily basis for five to six months preceding Jewell's death. The transactions were conducted inside the home and the cocaine she purchased was typically kept in Stephens's purse or in a hiding place underneath the arm of a sofa in the living room. Ms. Ward's last purchase was between 3:00 p.m. and 9:00 p.m. the evening before Jewell died in the early morning hours the following day.

4

Another witness testified she purchased "loose" cocaine approximately twenty times from appellant's home prior to Jewell's death. The cocaine was retrieved from the sofa, and appellant served as the lookout at all these transactions in that he would be "watching the front." Children were inside the home during each of these transactions, one of which transpired just three days before the death.

No evidence was presented that appellant was inside the house when the drug transactions with Ms. Wheeler, Ms. Ward, or any other drug transaction, took place on the evening in question, or when the child ingested the cocaine. The undisputed testimony of appellant's friend, Marcus Roberts, was that from the time Roberts arrived at the house at approximately 10:00 p.m., he and appellant spent most of the evening on the front porch of the house, and that the men first learned the child was ill when Stephens came out to tell appellant something was wrong with the baby. Mr. Roberts testified that a woman visited the house briefly while he and appellant were on the front porch.

1. Before addressing the issue of the sufficiency of the evidence to support the felony murder conviction, we first turn our attention to appellant's assertion that the trial court improperly admitted testimony of prior similar transactions which impermissibly placed his character in issue.

(a)   Appellant asserts the trial court improperly admitted the similar transactions evidence because the State's notice of intent to present such evidence was untimely.   The record shows the State filed a written pretrial notice of intent to present similar transactions evidence, but this notice was given only six days and not ten days prior to trial, as required by a specific pretrial ruling made by the trial court and by former Uniform Superior Court Rule 31.1.[2]  The trial court conducted hearings on the State's notice to present evidence of similar transactions on May 12, 2009, and again immediately prior to the commencement of the trial on May 18, 2009.  Appellant, however, lodged no objection to the admission of similar transactions evidence on the ground of inadequate notice at these hearings.  Consequently, appellant waived appellate review of this issue.  See *Jones v. State*, 272 Ga. 884, 886 (4) (546 SE2d 511) (2000).

(b) We reject appellant's assertion that the similar transactions evidence was improperly admitted into evidence because it was introduced solely for the improper purpose of placing his character in issue.  Here, after conducting the

---

[2]  "Reasonable notice to the defense in advance of trial" of the State's intent to present evidence of other acts is now codified at OCGA § 24-4-404 (b).

6

necessary hearing, the trial court found the testimony of each of the similar transaction witnesses to be admissible because the prior transactions described by each witness were sufficiently similar to the crime charged so that proof of the former tended to prove the latter, and the trial court further found the relevance of the similar transactions evidence outweighed the inherent prejudice it creates. See *Reeves v. State*, 294 Ga. 673, 676 (2) (755 SE2d 695) (2014). We accept the trial court's factual findings because we find they were not clearly erroneous, and we find the trial court did not abuse its discretion in deciding to admit the similar transactions evidence. See *Rivers v. State*, 296 Ga. 396, 401(4) (768 SE2d 486) (2015). Further, we note that the trial court gave appropriate instructions to the jury regarding the limited purpose for which they were to consider the evidence of similar transactions.

2. (a) Appellant contends the evidence was insufficient to support his conviction for possession of cocaine with intent to distribute, which formed the basis for the felony murder charge under Count 1 of the indictment for which a life sentence was imposed, because, he claims, the only evidence presented with respect to either possession or intent to distribute was the prior similar transactions testimony of witnesses. It is true that the only testimony about sales

appellant made directly to others related to sales made prior to the evening that ended in the victim's death. This does not, however, preclude a rational trier of fact from finding appellant guilty beyond a reasonable doubt. First, even if the only evidence of possession on the night in question was that co-defendant Stephens was in possession of the cocaine that the victim ingested, a rebuttable presumption of joint possession is created where, as here, two persons live in the residence where drugs are found. See *Stacey v. State*, 292 Ga. 838, 840 (1) (a) (741 SE2d 881) (2013). It was for the jury to decide if the presumption of joint possession was rebutted by the evidence, and in this case we cannot say the verdict is insupportable as a matter of law. See *Lackey v. State*, 286 Ga. 163, 164 (2) (686 SE2d 112) (2009).

Second, as to intent to distribute, the similar transactions evidence was sufficient for a jury to conclude that sometimes appellant sold cocaine directly and sometimes he acted as a lookout and was a party to the crime of Stephens's sales of cocaine. See *Dixon v. State*, 277 Ga. App. 656, 659 (627 SE2d 406) (2006) ("Acting as a lookout for a person who is committing a crime authorizes a conviction for that crime."). From the testimony of witnesses about prior similar transactions, a jury could reasonably conclude appellant was a party,

along with his co-defendant, to the ongoing enterprise of possession of cocaine with intent to distribute, and thus was guilty beyond a reasonable doubt of possession of cocaine with intent to distribute on the night in question. In fact, the indictment charged appellant with the offense of felony murder as a party to the crime with his co-defendant.

Appellant also asserts the circumstantial evidence of his involvement in the crimes charged on the evening in question was insufficient to support the guilty verdict because it does not exclude every reasonable hypothesis except that of guilt. This Court, however, has long held that whether circumstantial evidence meets this test is ordinarily a question for the jury, and the jury's determination will not be disturbed so long as it is supportable as a matter of law. See, e.g., *Reeves v. State*, supra, 294 Ga. at 674 (1). Further, such evidence need only exclude reasonable inferences and hypotheses and need not "'be devoid of *every* inference or hypothesis except that of the defendant's guilt.'" Id. (quoting *White v. State*, 263 Ga. 94, 97 (1) (428 SE2d 789) (1993)). On appeal, the evidence is viewed in the light most favorable to support the verdict, and appellant no longer enjoys a presumption of innocence. See *Batten v. State*, 295 Ga. 442, 443 (1) (761 SE2d 70) (2014).

The circumstantial evidence of possession with intent to distribute in this case was that appellant was present at the house and spent most of the evening out on the porch, during which time at least one individual came to purchase cocaine from the co-defendant, and that appellant pointed out to the investigating officer the location where the victim ingested the cocaine. But that was not the only evidence presented. That evidence in conjunction with the similar transactions evidence was sufficient for a jury to exclude every reasonable hypothesis except that of appellant's guilt. See *Maddox v. State*, 322 Ga. App. 811, 813-814 (1) (746 SE2d 280) (2013) (similar transaction evidence provided proof of intent to exercise control over cocaine within appellant's reach in addition to the circumstantial evidence also presented); *Taylor v. State*, 305 Ga. App. 748, 751-752 (1) (700 SE2d 841) (2010) (circumstantial evidence combined with other evidence such as similar transactions will support a conviction for possession of cocaine). Accordingly, we find the evidence sufficient, in accordance with the standard set forth in *Jackson v. Virginia*,[3] to authorize the jury to find appellant guilty beyond a reasonable doubt of possession of cocaine with intent to distribute on the evening in question as

---

[3] 443 U.S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

10

charged in the indictment.

(b) According to appellant, regardless of whether the evidence was sufficient to sustain the guilty verdict for the underlying felony of possession of cocaine with intent to distribute, the evidence was insufficient to permit a jury to find him guilty of felony murder predicated upon this offense. This is because, appellant argues, possession with intent to distribute is not the type of felony which by its nature or by the attendant circumstances present in this case creates a foreseeable risk of death. We disagree.

In this case, the evidence shows appellant possessed cocaine in his home where his five children lived, including the one year-old victim. The evidence shows it was typically hidden inside a hole in the living room sofa, which was accessible to the victim, who was able to walk and was allowed to roam the home. That the presence of cocaine within the reach of a young child creates a risk of death is highly foreseeable. Additionally, the undisputed testimony of expert witnesses confirmed the victim's ingestion of cocaine was the cause of death in this case. The facts support the unmistakable conclusion that the victim ingested this deadly dose of cocaine after finding it in the place where appellant and the co-defendant stored it to sell to others. Under the circumstances present

in this case, the evidence is sufficient to support appellant's conviction for felony murder arising out of possession of cocaine with intent to distribute. See *Johnson v. State*, 292 Ga. 856, 858 (1) (742 SE2d 460) (2013) (affirming conviction for felony murder predicated upon second degree cruelty to children where the evidence showed appellant acted with willful, wanton, or reckless disregard for her son's safety in failing to prevent him from accessing prescription methadone).

3.    Appellant contends his conviction on Count 4, felony murder predicated upon contributing to the deprivation of a minor resulting in the death of a child, should be vacated. Appellant's conviction on this charge, however, was effectively vacated and appellant was not sentenced for it.  Consequently this argument is moot.

4. Appellant asserts the trial court committed plain error in failing to instruct the jury properly on the indictment's charges of possession of cocaine and possession with intent to distribute, and thus his conviction must be reversed.  The trial court's instruction stated, in pertinent part:

> [I]t is unlawful for any person to possess or have under one's control with intent to distribute any quantity of cocaine[,] which is a controlled substance.   Intent to distribute means intent to

12

unlawfully deliver or sell. . . . [I]t is unlawful for any person to possess any quantity of cocaine[,] which is a controlled substance within the meaning of [the Georgia Controlled Substances Act].

(Paragraph indention omitted.) Appellant complains that because the trial court did not define the terms "deliver" or "delivery," as defined by OCGA § 16-13-21 (7)[4], nor the term "distribute," as defined by OCGA § 16-13-21 (11)[5], it omitted essential elements of the crime of possession with intent to distribute.

This Court has held "it is settled that a trial court is not required to instruct on the meaning of all words used in the charge, particularly words of common understanding." (Internal quotations omitted.) *McKibbins v. State*, 293 Ga. 843, 854 (7) (750 SE2d 314) (2013) (addressing the trial court's failure to define the word "accomplice"). See also *Philpot v. State*, 268 Ga. 168, 171 (3) (486 SE2d 158) (1997) (jury instructions were not inadequate for failing to define the terms "knowingly" and "great risk" in the context of OCGA § 17-10-30 (b) (3) regarding aggravating circumstances for authorizing the imposition of the death penalty); *Smith v. State*, 249 Ga. 228, 229 (2) (290 SE2d 43) (1982) (no error

[4] OCGA § 16-13 21 (7) states as follows: "'Deliver' or 'delivery' means the actual, constructive, or attempted transfer from one person to another of a controlled substance, whether or not there is an agency relationship."

[5] OCGA § 16-13-21 (11) states as follows: "'Distribute' means to deliver a controlled substance, other than by administering or dispensing it."

committed by trial court's failing to define the word "mitigating" since mitigation is a word of common meaning and understanding). The Court of Appeals has specifically found in cases in which, as here, the trial court properly instructed the jury on the meaning of "intent," and also instructed the jury with respect to simple possession and possession with intent to distribute, that the trial court commits no error in failing to charge the jury specifically with a definition of "intent to distribute." See *Boring v. State*, 303 Ga. App. 576, 580 (2) (694 SE2d 157) (2010), and cases cited therein. Considering the instructions as a whole, and reviewing the case for plain error pursuant to OCGA § 17-8-58 (b) and *State v. Kelly*[6], the charge on possession of cocaine with intent to distribute did not amount to plain error. See *McKibbins*, supra, 293 Ga. at 854. Appellant fails to set forth his reasons for believing the trial court's instruction on simple possession was inadequate, and, having reviewed the charge, we find no plain error.

5. Prior to the testimony of the first witness who gave similar transaction testimony, the trial court gave instructions regarding the limited purpose for which such testimony may be considered, which included the following

---

[6] 290 Ga. 29, 31-32 (1) (718 SE2d 232) (2011).

14

language:

> The law provides that evidence of other acts or occurrences of these defendants that are sufficiently similar or connected are . . . purportedly related to the offenses for which the defendant is on trial and may be considered for a very limited purpose of showing[,] if it does[,] a course of conduct, a common scheme, or bent of mind in the crimes charged in the case now on trial.

Before each similar transaction witness testified, the trial judge reminded the jury of these limiting instructions with respect to their consideration of the testimony. In the final instructions to the jury, the trial court stated, in pertinent part, regarding the jury's consideration of similar transactions evidence:

> The law provides that evidence of other acts or occurrences of these defendants that are sufficiently similar or connected and therefore purportedly related to the offenses for which the defendants are now on trial may be considered for the limited purpose of showing[,] if it does[,] the course of conduct, the scheme, motive or bent of mind **of the crimes charged from which–which are now on trial.** Such evidence, if any, may not be considered by you for any other purpose.

(Emphasis in bolded language supplied.) Although appellant raised no objection to the instructions at trial, appellant asserts the emphasized language from the final jury instructions represents plain error in that it does not refer to the bent of mind, etc., "of the defendant" as it should have pursuant to the

15

pattern jury instructions applicable at the time of appellant's trial.[7]

Citing *Dodd v. State*[8] and *Rivers v. State*[9], appellant argues that the trial court's charge substantively expanded the limited purpose for which similar transactions evidence may be used, and might have improperly led the jury to conclude that the similar transactions evidence presented could be used directly to prove the crimes charged.[10] But in *Rivers*, the trial court's instruction was that the similar transactions evidence "*may be considered for the limited purpose of showing*, if it does, the identity of the perpetrator, the state of mind, and *the crimes charged in the case now on trial*." (Emphasis in original.) *Rivers*, supra, 236 Ga. App. at 709-710 (1). The Court of Appeals reversed because it was concerned that the instruction inadvertently informed the jury "that it also could consider similar transaction[s] evidence for the purpose of showing 'the crimes charged in the case,' and in considering an 'element of the

---

[7] See Suggested Pattern Jury Instructions, Vol. II: Criminal Cases, 4th ed. (2007), § 1.34.10.

[8] 324 Ga. App. 827 (752 SE2d 29) (2013).

[9] 236 Ga. App. 709 (513 SE2d 263) (1999).

[10] This case was tried prior to the adoption of Georgia's Evidence Code that became effective January 1, 2013 (see Ga. L. 2011, p. 99, § 1/HB 24). The former code section addressing the admissibility of similar transactions evidence applicable at this trial was codified at OCGA § 24-2-2. The current code section addressing evidence of other acts is found at OCGA § 24-4-404.

offense charged in this indictment.'" Id. at 712 (1) (b). See also *Dodd*, supra, 324 Ga. App. at 831 (in which the trial court charged that the similar transactions evidence could be considered for the limited purpose of showing "the state of mind . . . of the defendant *and the crimes charged in the case now on trial.*")[11].

The charge given in the case now before us cannot be understood as incorrectly instructing the jury that the similar transactions evidence may be used to show the crimes for which appellant was on trial. In the preliminary limiting instructions given prior to the admission of any similar transactions evidence, the trial court correctly charged that said evidence could be considered for the purpose of showing bent of mind, etc., "in the crimes charged in the case now on trial." In the final instructions, the trial court essentially made the same charge but instead of using the preposition "in," used the preposition "of" in relation to the crimes charged. "Jury charges are to be considered as a whole to determine whether there is error." *DeLeon v. State*, 289 Ga. 782, 783 (3) (716 SE2d 173) (2011). Unlike in *Dodd* and *Rivers*, the trial court in this case did not

---

[11] We express no opinion about whether *Dodd* and *Rivers* were correctly decided since, in any event, they are distinguishable, as noted in this Division of the opinion.

use the word "and," thereby instructing the jury that the similar transaction evidence could be considered to prove the elements of the crimes "and," or *in addition* to, the crimes charged in the case on trial. We find no error in the charge given.

6. Relying upon *Jackson v. State*, 276 Ga. 408, 410 (2) (577 SE2d 570) (2003), appellant asserts that the guilty verdicts returned by the jury were predicated upon some crimes that involved criminal intent (here, possession of cocaine and possession with intent to distribute) and other crimes that involved criminal negligence (here, cruelty to children in the second degree and contributing to the deprivation of a child). Consequently, according to appellant, the guilty verdicts for felony murder based upon acts of criminal negligence are mutually exclusive of the guilty verdicts for felony murder based upon acts involving specific criminal intent. Further, appellant claims the trial court committed plain error by failing to instruct the jury that they could find him guilty of either one or more felony murder counts predicated upon criminal negligence, or one or more of those counts predicated upon the criminal intent offenses for which he was charged, but not both. This Court recently overruled Jackson, however, in *State v. Springer*, 297 Ga. 376, 382 (1) (774 SE2d 106)

18

(2015) Accordingly, these enumerations of error lack merit.

7. We also reject appellant's assertion that the trial court committed plain error in failing to instruct the jury regarding the required proximate causation between the underlying predicate felonies and the victim's death, or that the charge improperly misled the jury into believing any felony could be the underlying predicate for a felony murder conviction in the case. The trial court's instruction quoted by appellant in his argument on this enumeration of error, describing felony murder, specifically informed the jury that cruelty to children in the second degree, contributing to the deprivation of a minor, and violation of the Georgia Controlled Substances Act "as charged in this indictment are each felonies." The instruction in its totality adequately instructed the jury on felony murder, possession of cocaine with intent to distribute (and each of the other crimes for which he was tried), and party to a crime. The indictment also adequately charged appellant with felony murder and each of the other crimes charged, and the trial court read the indictment to the jury. From these instructions, we fail to see how the jury could be misled that any felony, as opposed to the respective predicate felonies charged in this case, could have served as the basis for a felony murder conviction in the case.

Further, the instructions as a whole properly informed the jury that in order to convict for felony murder, it was required to determine appellant caused or was a party to the crime in causing the victim's death as a result of appellant's commission of the underlying felonies. Accordingly, the trial court was not required to give a separate charge on proximate causation. *Whiting v. State*, 296 Ga. 429, 430 (2) (768 SE2d 448) (2015). As in *Whiting*, we find no error in the trial court's charge as alleged in this enumeration of error, "plain or otherwise." Id.

8. Appellant did not clearly show that he was prejudiced by being jointly tried with his co-defendant. "In the absence of such a showing, this Court will not disturb the trial court's denial of a severance motion." *Murphy v. State*, 290 Ga. 459, 461 (3) (722 SE2d 51) (2012). To demonstrate entitlement to having his trial severed from the trial of a co-defendant, the moving party must show prejudice and a denial of due process, not simply a better chance of acquittal in a separate trial or that the evidence against the co-defendant was stronger. *Billings v. State*, 293 Ga. 99, 106 (6) (745 SE2d 583) (2013). We find the trial court did not abuse its discretion in denying appellant's motion for a separate trial.

9. In his motion for new trial, appellant asserted, among other things, ineffective assistance of counsel for several reasons, and he now argues the trial court erred in denying his motion. First, appellant asserts his trial counsel provided ineffective assistance for failing to request an instruction on involuntary manslaughter. "A person commits the offense of involuntary manslaughter in the commission of an unlawful act when he causes the death of another human being without any intention to do so by the commission of an unlawful act other than a felony." OCGA § 16-5-3 (a). According to appellant, the evidence in this case showed that the victim's death was unintentional, and even though he was charged only with felonies, a jury could have found from the evidence that he violated the reckless conduct statute, OCGA § 16-5-60 (b)[12]. Relying upon *Arnett v. State*[13], appellant argues a charge on involuntary manslaughter would thus have been required in this case had his counsel requested it. Trial counsel testified at the motion for new trial hearing, however,

---

[12] OCGA § 16-5-60 (b) states:

A person who causes bodily harm to or endangers the bodily safety of another person by consciously disregarding a substantial and unjustifiable risk that his act or omission will cause harm or endanger the safety of the other person and the disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation is guilty of a misdemeanor.

[13] 245 Ga. 470, 473 (3) (265 SE2d 771) (1980).

21

that appellant's primary defense theory was that he did not possess any cocaine on the night of the victim's death, and had no knowledge of or participation in any drug transactions that night. Trial counsel further testified that based upon that strategy and the evidence presented at trial, after consultation with appellant, it did not occur to counsel to seek a misdemeanor involuntary manslaughter instruction. Indeed, it is apparent from the trial transcript that requesting an involuntary manslaughter instruction would have been inconsistent with the defense appellant pursued at trial, which was that he committed no wrongful act on the night in question and bore no liability or responsibility for the victim's death. "[W]hen reviewing ineffective assistance of counsel claims, this Court applies a strong presumption that counsel's performance falls within the wide range of reasonable professional assistance." *Gill v. State*, 295 Ga. 705, 708 (2) (763 SE2d 719) (2014). Applying that presumption, we conclude trial counsel's failure to request an instruction on involuntary manslaughter was part of a reasonable trial strategy, and thus appellant has failed to demonstrate deficient performance of trial counsel, one of the two required prongs of the familiar *Strickland v. Washington*[14] standard

---

[14] 466 U.S. 688, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984).

22

for establishing ineffective assistance of counsel.

We reject appellant's argument that trial counsel provided ineffective assistance of counsel by failing to object to the State's untimely notice of intent to introduce similar transaction testimony. Given that trial counsel testified at the motion for new trial hearing that they were not surprised by the list of witnesses and were familiar with the similar transactions evidence reflected in the State's written notice, it is unlikely the trial court would have granted a motion to exclude that evidence, and appellant has failed to show his case was prejudiced by counsel's failure to oppose admission of the evidence. As prejudice is the second of the two required prongs of the *Strickland v. Washington* standard for establishing ineffective assistance of counsel, we reject appellant's assertion that this failure to object to similar transactions evidence demonstrates ineffective assistance of counsel. Having already rejected appellant's argument that the trial court committed plain error in failing to give a jury instruction on inconsistent, mutually exclusive verdicts despite trial counsel's failure to request such a charge, and also appellant's argument that the court committed plain error in giving its charge relating to similar transactions testimony despite counsel's failure to object to the charge, we similarly conclude

appellant has failed to demonstrate ineffective assistance of counsel in those respects. Such instructions were not supported by the evidence and appellant has failed to show prejudice as a result of these alleged deficiencies in counsel's performance.

Judgment affirmed. All the Justices concur.